Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
Christopher J. Galiardo, *pro hac vice*\*
 cgaliardo@thomasmoresociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming

*Attorneys for Plaintiff Roger Lopez*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER LOPEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF SAN DIEGO,<br><br>    Defendant. | Case No.: 3:24-cv-01577-LL-SBC<br><br>**DECLARATION OF PLAINTIFF ROGER LOPEZ IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge:         Hon. Linda Lopez<br>Courtroom:  5D<br>Hearing Date: December 18, 2024<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

I, Roger Lopez, declare and state as follows:

1. I am the Plaintiff in this lawsuit, over the age of 18, and competent to testify to the matters stated in this Declaration, all of which I base on my personal knowledge. I suffer no disability that prevents me from making this declaration.

2. I began to pray and offer peaceful pro-life sidewalk counseling to women in need near the abortion clinic in downtown San Diego just off the intersection of First Avenue and Grape Street in the mid-2000s, and on a weekly basis for the past 8 years.

3. I usually counsel alone about two mornings a week and one Saturday a month. I have never badgered a passerby or had a run-in with any clinic employee or volunteer. And to the best of my knowledge, no employee, volunteer, or passerby has ever complained about my interaction with him or her, although Antifa-type abortion rights protestors sometimes show up to scream obscenities in my face over bullhorns and sometimes get physically violent.

4. I offer women a pamphlet that dispassionately informs them that local nonprofits offer women in need a large array of pregnancy and childcare support, housing, legal services, and other benefits, all for free and with no strings attached.

5. Prior to the bubble zone, I estimate that often a third to half of the people walking into the clinic would accept pamphlets I offered to them, and nearly all of them thanked me. Of those who paused to talk with me, many told me they had no idea those free resources exist.

6. As a retiree, I lack resources to share that information with women in need in any way other than meeting and peaceably conversing with them on the public sidewalk outside the downtown clinic. Unlike Planned Parenthood, I cannot afford to spend tens of millions of dollars on sophisticated social media targeting or on print, billboard, and radio advertisements.

7. Since I began sidewalk counseling, roughly 100 passersby have cancelled their scheduled abortions and chosen life for their babies after speaking with me. I have had the great pleasure of holding one of the saved babies and have seen pictures of

babies who are now growing young children.

8. There is a back entrance into the clinic, so any person who drives into the clinic parking lot who does not wish to speak to me easily can enter and exit the clinic without coming anywhere near me. As a rule, I never approach vehicles because my fellow San Diegans are often scared of the city's growing number of panhandlers and could misperceive me as one if I were to approach.

9. San Diego's new buffer and bubble zones outside the clinic, combined with its new noise ordinance, have devastated my sidewalk ministry. Because a passerby is moving, and considering the time it takes me to ask for permission to approach someone, I typically need to start the request when they are 12 to 15 feet away, a distance at which they normally can't hear me unless I raise my voice to a volume that might be construed as threatening. It is difficult for passersby to even hear me ask for permission in a normal speech volume to approach them at this distance over the almost continuous drone of street and air traffic that is much louder than I'm allowed to be. Those who have been able to hear me during lulls in the traffic are more reluctant to reach out for a flyer than before the ordinance, due to the unnatural distance required by the ordinance, which is compounded by the fact that clinic escorts and security guards stand right next to them, between them and me, ordering them to ignore me.

10. I stand in fear of moving when a passerby comes within 8 feet of me because the ordinance's speech ban is so vague with what it means by an "approach" and "harassment" that I cannot know what is banned. Based on the ordinance's wording, I could be thrown in prison if a clinic employee says I tipped a pamphlet toward a passerby or nodded my head forward to say "Good morning!" to a passerby when the passerby was 7 feet and 11 inches away from me.

11. The speech ban's vagueness has forced me to severely censor myself lest someone accuse me of violating it. The fact that even *abortion clinic staff* can sue me for devastating damages or to get me thrown in jail if even they think I somehow

approached without consent or harassed a passerby has forced me to stand like a statute on the sidewalk. I know that even if clinic personnel bring a patently frivolous suit against me and I win in court, I would be out potentially tens of thousands of dollars in legal fees and costs. The process itself would be punishment.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on November 13, 2024, in San Diego, California.

_Roger Lopez_
Roger Lopez