MARA W. ELLIOTT, City Attorney
M. TRAVIS PHELPS, Assistant City Attorney
MATTHEW L. ZOLLMAN, Deputy City Attorney
California State Bar No. 288966
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Attorneys for Defendant CITY OF SAN DIEGO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ROGER LOPEZ, | ) Case No. 24-CV-01577-LL-DDL |
|---|---|
| Plaintiff, | ) **DEFENDANT CITY OF SAN DIEGO'S POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| CITY OF SAN DIEGO, | |
| Defendant. | ) **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |
| | ) [Fed. R. Civ. P. 12(b)(6)] |
| | ) Date: December 18, 2024<br>Judge: Hon. Linda Lopez<br>Court: 5D<br>Trial: Not Set |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................5

II.  STATEMENT OF FACTS ....................................................................................5

    A.   Background of the Ordinance ..................................................................5

    B.   Plaintiff's Allegations ...............................................................................7

III. LEGAL STANDARD.............................................................................................7

IV.  ARGUMENT..........................................................................................................8

    A.   Plaintiff's Claims are Foreclosed by *Hill v. Colorado*..........................8

    B.   The Ordinance Does Not Violate the First Amendment ........................9

        1.   The Ordinance is a Content Neutral Time, Place, and Manner Regulation. ..................................................................9

        2.   The Ordinance Serves a Substantial Government Interest........................................................................................11

        3.   The Ordinance is Narrowly Tailored and Leaves Open Ample Alternative Channels for Communication ...................12

        4.   The Ordinance is Not Overly Broad........................................16

        5.   The Ordinance is Not a Prior Restraint on Speech .................17

    C.   The Ordinance Does Not Violate the Due Process Clause.................17

V.   CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agostini v. Felton*
521 U.S. 203 (1997) .................................................................................. 9

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .................................................................................. 7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .................................................................................. 7

*Brown v. City of Pittsburgh*
586 F. 3d 263 (3d Cir. 2009) .................................................................... 8

*Clark v. Community for Creative Non-Violence*
468 U.S. 288, 293 (1984) .......................................................................... 9

*Grayned v. City of Rockford*
408 U.S. 104 (1972) ................................................................................ 15

*Hill v. Colorado*
530 U.S. 703 (2000) .......................................................................... 5, 8-18

*Hoye v. City of Oakland*
653 F. 3d 835 (9th Cir. 2011) ............................................................. 8, 10

*Madsen v. Women's Health Ctr., Inc.*
512 U. S. 753 (1994) ........................................................................... 9, 17

*McCullen v. Coakley*
573 U.S. 464 (2014) .......................................................................... 11, 12

*Schenck v. Pro–Choice Network of W.N.Y.*
519 U.S. 357 (1997) .................................................................... 9, 13, 17

*State Oil Co. v. Khan*
522 U. S. 3 (1997) ..................................................................................... 8

*Turner Broadcasting Systems, Inc. v. FCC*
512 U.S. (1994) ......................................................................................... 9

*Vitagliano v. County of Westchester*
71 F. 4th 130 (2d Cir. 2023) ..................................................................... 8

*Ward v. Rock Against Racism*
491 U.S. 781(1989) ............................................................................. 9, 12

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................ 7

**Other Authorities**

San Diego Municipal Code

    Section 52.1001 ...................................................................................................5, 11

    Section 52.1002 ...................................................................................................5, 14

    Section 52.1003 ......................................................................................................... 5

    Section 52.1003(a) ..................................................................................................... 6

    Section 52.1003(b) ..................................................................................................... 6

    Section 52.1003(c) ..................................................................................................... 6

    Section 52.1004 .....................................................................................................5, 7

    Section 52.1004(a) ..................................................................................................... 7

    Section 52.1004(a)(1)-(3) .......................................................................................... 7

    Section 52.1005 ......................................................................................................... 5

    Section 52.1006 ......................................................................................................... 5

# I.
# INTRODUCTION

Plaintiff, a self-identified "sidewalk counselor" who regularly engages in anti-abortion protest activities outside healthcare facilities, challenges the constitutionality of San Diego Ordinance No. O-21822, which regulates activities outside healthcare facilities, places of worship, and school grounds by establishing buffer zones to protect persons from harassment, obstruction, and intimidation. Plaintiff contends that the Ordinance violates his rights under the First and Fourteenth Amendments to the United States Constitution.

Plaintiff relies on hyperbole and mischaracterization to portray the Ordinance as a draconian, discriminatory measure targeting anti-abortion protesters. In reality, the Ordinance is constitutionally sound. It is modeled after the Colorado statute upheld by the Supreme Court in *Hill v. Colorado*, which confirmed that similar buffer zones are content-neutral, narrowly tailored regulations serving significant governmental interests without unduly burdening speech.

Because Plaintiff's facial challenge is barred by binding precedent and the Ordinance withstands constitutional scrutiny, the City respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety.

# II.
# STATEMENT OF FACTS

### A.    Background of the Ordinance

San Diego Ordinance O-21822 (the "Ordinance") amends the San Diego Municipal Code ("SDMC") by amending sections 52.1001, 52.1002, and adding new sections 52.1003, 52.1004, 52.1005, and 52.1006.[1] The Ordinance seeks to regulate conduct near Covered Facilities, which are defined to include health care

---

[1] A complete copy of Ordinance O-21822, dated June 11, 2024, and the adopted municipal code sections, is attached to Plaintiff's Complaint as Exhibit A.

facilities, places of worship, and school grounds ("Covered Facilities"). The Ordinance is intended to prevent the obstruction, harassment, and intimidation of people entering and exiting Covered Facilities while preserving the fundamental constitutional rights of people to peacefully assemble and express opinions on matters of public concern. *Id.*

SDMC section 52.1003(a) prohibits individuals from obstructing an entrance, exit, or access to a parking lot at a Covered Facility. SDMC 52.1003(a). SDMC 52.1003(b) establishes a buffer zone at Covered Facilities to prevent harassment and intimidation:

> (b) Harassment and Intimidation Prohibited. Within a radius of 100 feet of a *health care facility, place of worship,* or *school grounds,* no person shall:
>
> (1) approach within eight feet of a person in the public right-of-way or sidewalk area who is seeking to enter or exit a *health care facility, place of worship,* or *school grounds* to *harass* or *intimidate* that person; or
>
> (2) *harass* or *intimidate* a person in the public right-of-way or sidewalk area who is seeking to enter or exit a *health care facility, place of worship,* or *school grounds.*

San Diego Municipal Code section 52.1003(c) requires consent for certain activities within the 100 feet of Covered Facilities:

> Within a radius of 100 feet of a *health care facility, place of worship, or school grounds*, unless the person or motor vehicle occupant *consents*, no person shall:
>
> (1) knowingly and willfully approach within eight feet of a person in the public right-of-way or sidewalk area who is seeking to enter or exit a *health care facility, place of worship, or school grounds*, to:
>
> >  (i) pass a leaflet or handbill to that person;
> >
> >  (ii) display a sign to that person; or
> >
> >  (iii) engage in oral protest, education, or counseling.
>
> (2) knowingly and willfully approach within eight feet of an occupant of a motor vehicle seeking to enter or exit a *parking lot,* to:

        (i) pass a leaflet or handbill to the motor vehicle occupant;

        (ii) display a sign to the motor vehicle occupant; or

        (iii) engage in oral protest, education, or counseling.

Lastly, within 100 feet of a Covered Facility, SDMC 52.1004(a) prohibits (1) "any disturbing, excessive, or offensive noise which causes discomfort or annoyance to any reasonable person of normal sensitivities"; (2) "any noise which unreasonably interferes with the workings of a [Covered Facility];" or (3) "[using] loud speaking amplifiers or similar devices in a manner that emits a sound level exceeding 55 decibels any point ten feet or more from the noise source." Ordinance; SDMC §52.1004(a)(1)-(3).

### B. Plaintiff's Allegations

Plaintiff Roger Lopez is a pro-life activist who regularly engages in sidewalk counseling outside the Planned Parenthood clinic located in San Diego (Compl. ¶¶ 1, 16). Plaintiff alleges the Ordinance, on its face, violates his right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution. (Compl. ¶ 73.) Plaintiff also alleges the Ordinance is unconstitutionally vague and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (Compl. ¶ 86.)

## III.
## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the allegations in the complaint. To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint need not contain detailed allegations, legal conclusions or threadbare recitals of a cause of action's elements do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

/ / / / /

# IV.

# ARGUMENT

### A.     Plaintiff's Claims are Foreclosed by *Hill v. Colorado*

The Ordinance closely mirrors the statute upheld in *Hill v. Colorado*, 530 U.S. 703 (2000). In *Hill*, the Supreme Court upheld a Colorado law that established a 100-foot buffer zone around healthcare facility entrances, prohibiting individuals from "knowingly approach[ing]" within eight feet of another person without consent for purposes such as distributing leaflets, displaying signs, or engaging in oral protest or counseling. *Id.* at 707. The Colorado statute's text and purpose are substantially similar to the Ordinance. See *Id.* at 707, fn. 1. *Hill* remains binding precedent and governs this case. Under *Hill*, the Ordinance is a narrowly tailored, content-neutral time, place, and manner regulation that is neither overbroad nor unconstitutionally vague.

Since *Hill*, courts have repeatedly upheld the facial constitutionality of buffer zones similar to the Ordinance. In *Brown v. City of Pittsburgh*, 586 F. 3d 263, 270-73 (3d Cir. 2009), the Third Circuit, applying *Hill,* upheld Pittsburgh's 8-foot buffer zone against a facial challenge without requiring an evidentiary showing from the city. Likewise, the Ninth Circuit in *Hoye v. City of Oakland*, 653 F. 3d 835, 843 (9th Cir. 2011), upheld an 8-foot buffer zone, noting that *Hill* controlled much of the analysis and affirmed the ordinance as a valid time, place, and manner restriction. *Id.* See also *Vitagliano v. County of Westchester*, 71 F. 4th 130 (2d Cir. 2023) (same).

*Hill* is directly on point and controls the outcome of this case. Plaintiff's attempt to characterize *Hill* as "divergent" is an effort to reargue the precedent rather than distinguish it, but that argument is futile. (Compl. ¶ 26, fn. 1.) Only the Supreme Court can overrule its own precedents. See *State Oil Co. v. Khan,* 522 U.S. 3, 20 (1997). The Supreme Court has made it clear that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in

some other line of decisions, the Court of Appeals should follow the case [that] directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

### B. The Ordinance Does Not Violate the First Amendment

#### 1. The Ordinance is a Content Neutral Time, Place, and Manner Regulation.

"As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broadcasting Systems, Inc. v. FCC*, 512 U.S. 622, 643 (1994). Government regulation of expressive activity is content neutral, however, "so long as it is 'justified without reference to the content of the regulated speech.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

The Ordinance is facially content-neutral. It regulates speech without regard to its content and applies equally to all individuals engaged in leafleting, sign displays, or oral protests, education, or counseling, regardless of the message or the speaker's identity. The Ordinance does not make content-based distinctions within the buffer zone.

None of the four major Supreme Court cases on First Amendment rights of anti-abortion demonstrators have found the regulations at issue to be content based. See *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 767–68 (1994); *Schenck v. Pro–Choice Network of W.N.Y.*, 519 U.S. 357 (1997); *Hill*, 530 U.S. at 715; and *McCullen v. Coakley,* 573 U.S. 464 (2014).

*Hill* upheld a nearly identical statute, and the same reasoning applies here. As in *Hill*, the Ordinance "places no restrictions on—and clearly does not prohibit— either a particular viewpoint or any subject matter that may be discussed by a speaker. Rather, it simply establishes a minor place restriction on an extremely broad category of communications with unwilling listeners." *Hill*, 530 U.S. at 723.

Under the Ordinance, individuals may attempt to educate unwilling listeners on any subject, but without consent, they cannot approach within eight feet to do so.

Plaintiff relies on statements and actions by the San Diego City Council and the San Diego City Attorney to support his position. However, as *Hill* explained, a statute is not "viewpoint based" simply because its enactment was motivated by the conduct of partisans on one side of a debate. See *Hill*, 530 U.S. at 724. In fact, in *Hill*, the legislative record revealed that the statute was passed primarily to address pro-life speech outside abortion clinics, yet the Court still found the statute to be content neutral. *Id.* at 715.

*Hill* also considered—and rejected—the view that the statute was content-based in effect "because of its application 'to the specific locations where [that] discourse occurs.'" *Hill*, 530 U.S. at 724; *see also Hoye v. City of Oakland*, 653 F. 3d at 846 ("[I]n regulating speech immediately outside reproductive health facilities, disproportionate effect is not of decisive significance to the content-neutral inquiry.") Rather, the Court found that the relevant point under the First Amendment was that the statute "applies to all 'protest,' to all 'counseling,' and to all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision." *Hill*, 530 U.S. at 725.

Regulating the form or method of communication is, by definition, not regulating the content itself. The Ordinance advances the City's legislative intent to "prevent obstruction, harassment, and intimidation of people entering and exiting Covered Facilities while preserving the fundamental constitutional rights of people to peacefully assemble and express opinions on matters of public concern." Ordinance O-21822. This is a neutral justification for a law that remains neutral regarding the content of the affected speech.

/ / / / /

/ / / / /

## 2.   The Ordinance Serves a Substantial Government Interest

The Ordinance serves several important government interests. The San Diego City Council clearly stated that its purpose in adopting the Ordinance was to protect the privacy and safety of students, teachers, parents, worshippers, healthcare providers, and their patients at Covered Facilities. See Ordinance O-21822 at pp. 2-3. San Diego Municipal Code section 52.1001 includes the following prefatory statement:

> Purpose and Intent
>
> The Council finds that every person in the City of San Diego has a constitutional right to privacy in accessing healthcare, including reproductive healthcare, to exercise religion, and to access equal educational opportunities, and that intentional efforts to harass or prevent a person from exercising these rights are contrary to the interests of the people of San Diego. The Council further recognizes that every person in the City of San Diego has the constitutional right to assemble peaceably and to exercise free speech rights. It is the purpose of this Division to strike a balance between protecting the rights of those who seek access to healthcare, to practice their religion, and access educational services, while also protecting the rights of those who wish to express themselves.
>
> SDMC §52.1001

The City's purpose in adopting the Ordinance has consistently been recognized as a legitimate governmental interest. As the Supreme Court noted in *Hill*, "it is a traditional exercise of the States' police powers to protect the health and safety of their citizens. That interest may justify a special focus on unimpeded access to health care facilities and the avoidance of potential trauma to patients associated with confrontational protests." *Hill*, 530 U.S. at 715 (internal citations and quotation marks omitted); see also *McCullen,* 573 U.S. at 486-87 ("We have, moreover, previously recognized the legitimacy of the government's interests in ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights, and protecting a woman's freedom to seek pregnancy-related services." (citations omitted).) These same considerations apply equally to schools and places of worship. The City has a legitimate basis for

protecting unimpeded access to Covered Facilities through the balanced measures of the Ordinance.

### 3. The Ordinance is Narrowly Tailored and Leaves Open Ample Alternative Channels for Communication

A content-neutral time, place, or manner regulation must be "'narrowly tailored to serve a significant governmental interest.'" *McCullen*, 573 U.S. at 486 (quoting *Ward*, 491 U.S. at 796). A narrowly tailored regulation does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* (quoting *Ward*, 491 U.S. at 799). However, such a regulation "'need not be the least restrictive or least intrusive means of' serving the government's interests." *Id.* (quoting *Ward*, 491 U.S. at 798). The restriction on speech must also "leave open ample alternative channels for communication of the information." *Id.* at 477 (quoting *Ward,* 491 U.S. at 791.) Ultimately, "[t]he validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted." *Ward,* 491 U.S. at 800 (internal quotations omitted).

Here, Plaintiff's claims regarding narrow tailoring are entirely derivative of, and foreclosed by, the decision in *Hill*. The Colorado statute in *Hill*, like the Ordinance, prohibited intentional approaches within eight feet of another person outside healthcare facilities. It also limited its applicability to a 100-foot radius from the entrance to a healthcare facility, covering all public ways within that area and regulating access to "every entrance to every health care facility everywhere in the State of Colorado." *Hill*, 530 U.S. at 715. The regulated areas in *Hill* are identical in size to those specified in the Ordinance, both of which apply to healthcare facilities and require a culpable mental state.

Since the Ordinance was modeled after the Colorado statute in *Hill*, the question whether the Ordinance is narrowly tailored to serve a significant

government interest without substantially burdening more speech than necessary is already answered. The Ordinance is "narrowly tailored" and "leaves open ample alternative channels for communication." *Hill*, 530 U.S. at 726. *Hill* explained, "[a]s we have emphasized on more than one occasion, when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Id.* Like the statute at issue in *Hill*, the Ordinance does not actually foreclose any speech; it simply prohibits intentional approaches without consent within eight feet of an individual or their vehicle. Plaintiff and others remain free to display signs, communicate, and distribute literature.

Regarding the display of signs, *Hill* held "[t]he 8–foot separation between the speaker and the audience should not have any adverse impact on the readers' ability to read signs displayed by demonstrators. In fact, the separation might actually aid the pedestrians' ability to see the signs by preventing others from surrounding them and impeding their view." *Hill*, 530 U.S. at 726. The Ordinance also imposes no limitations on the number, size, text, or images on the signs. Like the statute in *Hill,* the Ordinance does not affect demonstrators with signs who remain in place.

For oral statements, *Hill* stated that the "8–foot zone allows the speaker to communicate at a 'normal conversational distance.'" *Hill,* 530 U.S. at 726-27; c*f. Schenck*, 519 U.S. at 377 (15-foot "buffer zone" around people entering or leaving clinics prevents individuals from communicating at normal conversational distance.) This conclusion aligns with common practices during the COVID-19 pandemic, when individuals frequently communicated with each other – while wearing masks – from at least six feet away. Furthermore, as in *Hill*, the Ordinance "allows the speaker to remain in one place, and other individuals can pass within eight feet of the protester without causing the protester to violate the statute." *Hill*, 530 U.S. at 727. Finally, the statute protects speakers by requiring "knowing and

willful" violations of the eight-foot zone, meaning a person who mistakenly misjudges the distance or inadvertently trips and falls within the eight-foot buffer is protected.

Under *Hill*, the Ordinance is also narrowly tailored to protect individuals' right to distribute handbills or leaflets. Like the Colorado statute, the Ordinance does not "prevent a leafletter from simply standing near the path of oncoming pedestrians and proffering his or her material, which the pedestrians can easily accept. And, as in all leafletting situations, pedestrians continue to be free to decline the tender." *Hill*, 530 U.S. at 727.

While the Ordinance differs from the Colorado statute by expressly prohibiting any acts to "harass or intimidate" individuals entering or exiting a Covered Facility, it defines harassment and intimidation in detail. Harassment involves knowingly and willfully engaging in conduct that seriously alarms or aggravates a reasonable person, excluding consensual conversations or displaying a sign from over eight feet away. Ordinance O-21822 at 4; SDMC §52.1002. Intimidation involves credible threats of violence or coercion intended to prevent access to a healthcare facility, place of worship, school grounds, or parking lot. *Id.*

Although the Colorado statute does not explicitly mention these terms, the *Hill* court recognized that its purpose was, in large part, to prevent harassment and intimidation. *See Hill*, 530 U.S. at 724 ("the statute's restriction seeks to protect those who enter a health care facility from the harassment, the nuisance, the persistent importuning, the following, the dogging, and the implied threat of physical touching that can accompany an unwelcome approach within eight feet of a patient by a person wishing to argue vociferously face-to-face and perhaps thrust an undesired handbill upon her.").

The Ordinance's prohibition on harassing and intimidating conduct would likely fall under the category of "oral protest" in the Colorado statute. Given *Hill's* repeated references to harassing conduct, an explicit prohibition against harassing

and intimidating conduct in the Colorado statute would not have altered the Court's tailoring analysis. The Ordinance's enhanced clarity and well-delineated prohibitions support upholding the legislation.

The Ordinance is also narrowly tailored in light of the government's substantial interest in controlling the activity around healthcare facilities, places of worship, and schools. *Hill* emphasized that "[p]ersons who are attempting to enter health care facilities—for any purpose—are often in particularly vulnerable physical and emotional conditions." *Hill*, 530 U.S. at 729. The Supreme Court has recognized a similar governmental interest surrounding schools. See *Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972). The Ordinance responds to the City's substantial interest in protecting these individuals from unwanted encounters, confrontations, and assaults by enacting a modest restriction on speakers' ability to approach. *Hill*, 530 U.S. at 729.

Like the statute at issue in *Hill*, the Ordinance leaves open adequate alternative channels of communication. It does not burden plaintiff's activities outside the designated buffer zone. Individuals can speak, gesticulate, display signs, use loudspeakers, and engage in a wide range of lawful expressive activities. Their messages may be fully seen and heard by individuals entering, departing, or within the buffer zone. Additionally, Plaintiff may stand on the sidewalk, even within the buffer zone, and offer literature or spoken advice to pedestrians, including those heading into or out of health care facilities.

The Ordinance is narrowly tailored precisely because it leaves open ample alternative channels of communication and does not impose more speech than necessary. It aims to ensure unimpeded access to health care facilities, schools, and places of worship, which is achieved through the limited prohibition on intentional approaches to non-consenting individuals. In this way, the Ordinance closely aligns the restriction on intentional approaches with the concerns being addressed. It does not restrict speech beyond the designated buffer zone or at locations not classified

as Covered Facilities. Even within the regulated areas, all forms of speech are allowed; only intentional approaches without consent are restricted. Consequently, the Ordinance clearly provides ample alternative channels for communication.

### 4. The Ordinance is Not Overly Broad

Plaintiff raises two overbreadth arguments, both of which were previously rejected in *Hill.* First, Plaintiff claims that the Ordinance is too broad because it protects too many people in too many places, rather than solely patients at facilities where confrontational speech has occurred. See Compl. at ¶¶ 66-69. This argument fails to identify a constitutional defect. As the *Hill* court noted, "the fact that the coverage of a statute is broader than the specific concern that led to its enactment is of no constitutional significance. What is important is that all persons entering or leaving health care facilities share the interests served by the statute." *Hill*, 530 U.S. at 730-31. Here, all individuals entering or leaving Covered Facilities share the same interest: unimpeded access. The regulation is a generally applicable statute, not an injunction, and cannot discriminate based on individuals' past conduct. Furthermore, the Court found that "the comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive." *Id*. at 731.

Second, Plaintiff argues that the Ordinance is overbroad because it prohibits certain protected expressions. (Compl. at ¶¶ 66, 70.). However, the Ordinance does not prohibit *any* messages, signs, literature, or oral statements. Like the Colorado statute in *Hill*, it merely regulates where communications may occur. *Hill*, 530 U.S. at 731. This part of Plaintiff's argument reflects a misinterpretation of the Ordinance.

The Ordinance, akin to the Colorado statute in *Hill*, is not constitutionally overbroad. It is a content-neutral regulation, and its application to all Covered Facilities is an asset, not a liability. Individuals entering healthcare facilities, schools, or places of worship all share the interest in exercising their rights free

from harassment and abuse. The Ordinance is specifically designed to promote unimpeded access to Covered Facilities without prohibiting substantive speech that Plaintiff or others may wish to communicate. It is narrowly tailored and offers ample alternative channels for communication. In summary, the Ordinance is a valid time, place, and manner restriction under the prevailing rulings of the United States Supreme Court.

### 5. The Ordinance is Not a Prior Restraint on Speech

Plaintiff briefly asserts that the Ordinance constitutes a prior restraint on certain types of speech (Compl. at ¶ 53). This claim lacks merit because the Ordinance does not close off any channel of communication—no speakers are silenced, and no messages are prohibited. Similar prior restraint arguments were raised and rejected in *Hill*, 530 U.S. at 733-35, *Schenck*, 519 U.S. at 374, fn. 6, and *Madsen*, 512 U.S. at 764, fn.2. Accordingly, the Ordinance does not impose a prior restraint on speech.

### C. The Ordinance Does Not Violate the Due Process Clause

Plaintiff's claim that the Ordinance is unconstitutionally vague under the First and Fourteenth Amendments ignores the controlling precedent set in *Hill*. Plaintiff asserts that the Ordinance fails to define key terms like "alarm," "aggravate," "terrorize," "threaten," "torment," "substantial distress," and "seriously alarm" (Compl. at ¶ 81), and finds even the defined terms "harass" and "intimidate" vague (Compl. at ¶ 28). A law is considered impermissibly vague if it does not provide a person of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Hill*, 530 U.S. at 732. Plaintiff's argument, however, presumes that ordinary people cannot comprehend the meaning of plain terms like "threaten."

*Hill* forecloses Plaintiff's objections. In *Hill*, petitioners raised similar vagueness challenges to the Colorado statute's terms, but the Court rejected these, stating: "Petitioners proffer hypertechnical theories as to what the statute covers,

such as whether an outstretched arm constitutes 'approaching.' And while there is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question, because we are [c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Hill*, 530 U.S. at 733 (internal citations omitted). The Court concluded that "it is clear what the ordinance as a whole prohibits," and hypothetical vagueness does not justify a facial challenge to a statute that is valid "in the vast majority of its intended applications." *Id*. The Ordinance provides even greater clarity and specificity than the statute upheld in *Hill* by virtue of its enhanced clarity and precision in identifying prohibited conduct.

Plaintiff further contends that the Ordinance lacks sufficient guidance for law enforcement (Compl. at ¶¶ 83-85). This argument was raised and rejected in *Hill*, where the Court found that the Colorado statute "involved an acceptable exercise of police judgment" and praised the "specificity of the definitions of the zones described in the statute." *Hill*, 530 U.S. at 733. Since the Ordinance adopts identical zones and requires similar judgment from law enforcement, it is constitutionally sound and provides adequate clarity for enforcement.

## V.
## CONCLUSION

For these reasons, this Court should dismiss Plaintiffs' claims.

Dated: November 13, 2024        MARA W. ELLIOTT, City Attorney

                                By */s/Matthew L. Zollman*
                                    Matthew L. Zollman
                                    Deputy City Attorney

                                Attorneys for Defendant CITY OF SAN DIEGO