]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER LOPEZ,<br><br>                       Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO,<br><br>                       Defendant. | Case No.: 24cv1577-LL-DDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF No. 12];**<br><br>**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF No. 11];**<br><br>**ORDER GRANTING UNOPPOSED EX PARTE MOTION FOR LEAVE TO FILE A NOTICE OF SUPPLEMENTAL AUTHORITY [ECF No. 21]** |

Pending before the Court is Plaintiff Roger Lopez's Motion for Preliminary Injunction. ECF No. 11. Plaintiff seeks to enjoin Defendant, the City of San Diego, from enforcing Ordinance No. O-21822 and the corresponding San Diego Municipal Code sections. *Id.*; *see also* Exhibit A to the Complaint at ECF No. 1. Also pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil

Procedure 12(b)(6). ECF No. 12. Both Motions have been fully briefed and are suitable for submission without oral argument. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Motion for a Preliminary Injunction is **DENIED AS MOOT**.

## I. BACKGROUND

### A. City of San Diego's Ordinance Number O-21822

This case centers on the City of San Diego's Ordinance Number O-21822[1] ("the Ordinance") which regulates conduct within 100 feet of health care facilities, places of worship, and school grounds (hereinafter "Covered Facilities"). ECF No. 1. ("Compl."). The Ordinance amends two sections of the San Diego Municipal Code ("SDMC"), sections 52.1001, 52.1002, and adds four new sections 52.1003, 52.1004, 52.1005, 52.1006. *See* Exhibit A to Compl.; *see also* Compl. ¶ 24.

The Ordinance, which was enacted by the City of San Diego on June 11, 2024, provides that the "Council desires to prevent the obstruction, harassment, and intimidation of people entering and exiting Covered Facilities while preserving the fundamental constitutional rights of people to peacefully assemble and express opinions on matters of public concern." Exhibit A to the Compl. at 30. The Ordinance prohibits an individual from obstructing an entrance, exit, or access to a parking lot at a Covered Facility and also prohibits harassment and intimidation as follows:

> (b) Harassment and Intimidation Prohibited. Within a radius of 100 feet of a health care facility, place of worship, or school grounds, no person shall:
> (1) approach within eight feet of a person in the public right-of-way or sidewalk area who is seeking to enter or exit a health care facility, place of worship, or school grounds to harass or intimidate that person; or
> (2) harass or intimidate a person in the public right-of-way or sidewalk area who is seeking to enter or exit a health care facility place of worship, or school grounds.

---

[1] Plaintiff refers to the Ordinance as O-2024-114 in his briefing (*See, e.g.*, ECF No. 16 at 10; *see also* ECF No. 11-1 at 10). For ease of reference, the Court will refer to it as Ordinance Number O-21822, as captioned in the title of the Ordinance. *See* Exhibit A to the Compl.

SDMC 52.1003.

The Ordinance requires consent for certain activities within a radius of 100 feet of Covered Facilities as follows:

> (c) Consent Required. Within a radius of 100 feet of a health care facility, place of worship, or school grounds, unless the person or motor vehicle occupant consents, no person shall:
> (1) knowingly and willfully approach within eight feet of a person in the public right-of-way or sidewalk areas who is seeking to enter or exit a health care facility, place of worship, or school grounds, to:
>     (i) pass a leaflet or handbill to that person;
>     (ii) display a sign to that person;
>     (iii) engage in oral protest, education, or counseling.
> (2) knowingly and willfully approach within eight feet of an occupant of a motor vehicle seeking to enter or exit a parking lot, to:
>     (i) pass a leaflet or handbill to the motor vehicle occupant;
>     (ii) display a sign to the motor vehicle occupant; or
>     (iii) engage in oral protest, education, or counseling.

*Id*.

The Ordinance also sets forth the following "Noise Limitations":

> (a) Within a radius of 100 feet of a health care facility, place of worship, or school grounds, no person shall:
> (1) make, or cause to be made, any disturbing, excessive, or offensive noise which causes discomfort or annoyance to any reasonably person of normal sensitivities; or
> (2) make, or cause to be made, any noise which unreasonably interferes with the workings of a health care facility, place of worship, or school; or
> (3) use loud speaking amplifiers or similar devices in a manner that emits a sound level exceeding 55 decibels any point ten feet or more from the noise source.

SDMC 52.1004.

The Ordinance is modeled on a Colorado law upheld as constitutional in *Hill v. Colorado*, 530 U.S. 703 (2000). One difference between the two laws is the instant Ordinance's inclusion of places of worship and school grounds, while the ordinance in *Hill*

applied only to health care facilities. *Id.* at 707. Additionally, the instant Ordinance expressly prohibits any acts to "harass or intimidate," and has a stricter noise ordinance.

On September 5, 2024, Plaintiff Roger Lopez sued the City of San Diego, claiming that the Ordinance violates his free speech rights under the First and Fourteenth Amendment of the United States Constitution, on its face. Compl. Plaintiff is a "sidewalk counselor" who alleges his "only chance to directly help abortion-minded women is on the public sidewalk." *Id.* ¶ 16. As part of his sidewalk counseling, he stands outside of the downtown Planned Parenthood clinic about 20-25 hours each month "to offer passersby a smile, a shoulder to cry on, and sometimes pamphlets that discuss free pregnancy and childcare resources and social services available to them." *Id.* He "listens with empathy and as best he can to the story each passerby tells, even when abortion activists block his way and scream obscenities in his face." *Id.* He alleges that "more than 100 women have chosen life after talking with him over the last 15 years since [he] began counseling in front of abortion clinics." *Id.* Plaintiff alleges that "counselors including [himself] have begun to self-censor lest they risk heavy damages, penalties, fees, and prison time for the offense of peaceably speaking in a public place." *Id.* at 47.

The relief sought in the Complaint is as follows:

(A) That the Court declare that [the Ordinance] facially violates the First and Fourteenth Amendment to the United States Constitution;
(B) That the Court enter preliminary and permanent injunctions against the ordinance;
(C) That the Court award Plaintiff Lopez nominal damages;
(D) That the Court award Plaintiff Lopez his costs of litigation, including reasonable attorneys' fees and costs; and
(E) That the Court grant such further relief it deems just and proper.

Compl. at 24, Prayer for Relief.

## II.  BACKGROUND

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting

1  *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " *Id.* at 1242 (internal quotation omitted).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (internal citation omitted).

///

## III. ANALYSIS

### a. Summary of Parties' Arguments

In his Complaint, Plaintiff asserts claims for (1) Violation of Plaintiff's Freedom of Speech and Expressive Association; and (2) Violation of Due Process under the First and Fourteenth Amendment to the United States Constitution. *See generally* Compl. Defendant seeks to dismiss both of Plaintiff's causes of action arguing that dismissal is required because "the Ordinance closely mirrors the statute upheld in *Hill v. Colorado*, 530 U.S. 703 (2000)." MTD at 8. Defendant argues:

> In *Hill,* the Supreme Court upheld a Colorado law that established a 100-foot buffer zone around healthcare facility entrances, prohibiting individuals from 'knowingly approach[ing]' within eight feet of another person without consent for purposes such as distributing leaflets, displaying signs, or engaging in oral protest or counseling. *Id.* at 707. The Colorado statute's text and purpose are substantially similar to the Ordinance. Under *Hill*, the Ordinance is narrowly tailored, content-neutral time, place, and manner regulation that is neither overbroad nor unconstitutionally vague.

*Id*. Defendant further argues that "[s]ince *Hill,* courts have repeatedly upheld the facial constitutionality of buffer zones similar to the Ordinance." *Id.* (citing *Brown v. City of Pittsburgh*, 586 F.3d 263, 270-73 (3d Cir. 2009); *Hoye v. City of Oakland*, 653 F.3d 835, 843 (9th Cir. 2011); *Vitagliano v. County of Westchester,* 71 F. 4th 130 (2nd Cir. 2023)). In sum, Defendant argues that "*Hill* is directly on point and controls the outcome of this case." MTD at 8.

Plaintiff opposes and argues that "Plaintiff's claims are not foreclosed by *Hill v. Colorado's* holding." Oppo. at 13.[2] Plaintiff argues that there are key dissimilarities in the instant Ordinance from the *Hill* case including "why the zones were drawn," "how quickly

---

[2] In support of Plaintiff's Opposition to the Motion to Dismiss, Plaintiff includes the Declaration of Christopher J. Galiardo, Plaintiff's attorney. ECF No. 16-1. In the Declaration, Mr. Galiardo includes maps of the areas at issue in the Ordinance drawn using ArcGIS Map Viewer. *Id*. at ¶¶ 3-9. Defendant objects to this Declaration as "improper and inadmissible." ECF No. 17-1. The Court **OVERRULES** Defendant's Objection as the Court did not consider Mr. Galiardo's Declaration in its ruling.

the zones were drawn," the "bubble zone design principles" and "smothered alternative communication channels." Oppo. at 13-20. In sum, Plaintiff argues:

> Even if *Hill* is still good law and is binding precedent in this case despite the abovementioned dissimilarities between the two statutes, [the Ordinance] still clearly violates the First Amendment for reasons given in *Hill*. The logic of and principles articulated in *Hill* compel the conclusion that those and additional dissimilarities mentioned in the Complaint and above combined to convert [the Ordinance] into a content-and viewpoint-based speech restriction. But even if one were to ignore that logic and those principles to conclude that the ordinance is content-neutral, the speech ban the ordinance imposes does not advance a government interest in a narrowly tailored way and so cannot survive scrutiny even as a time, place, or manner speech regulation.

Oppo. at 21.

### b. The First Amendment, Generally

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting U.S. Const. Amend. I). "Content-based laws – those that target speech based on its communicative content – are presumptively unconstitutional" and are subject to strict scrutiny. *Id.* at 163. Laws are content based if they "target speech based on its communicative content," *id.* or "single[] out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc). Strict scrutiny permits "[c]ontent-based regulations [to] pass constitutional muster only if they are the least restrictive means to further a compelling interest." *S.O.C., Inc. v. Cty. Of Clark*, 152 F.3d 1136 (9th Cir. 1998).

On the other hand, "[t]he government may place reasonable time, place, and manner restrictions on speech" if the regulation is content neutral. *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006). Content neutral restrictions are subject to intermediate scrutiny and "must be justified without reference to the protected speech's content," and "narrowly tailored to serve a significant government interest, leaving open

ample alternative channels of expression." *Id*.; *Reed*, 576 U.S. at 163 ("Laws that are content neutral are…subject to lesser scrutiny.").

### c. The Ordinance is Content Neutral

The parties first dispute whether the Ordinance is content based or content neutral, and thus whether strict or intermediate scrutiny applies. Defendant contends that under *Hill*, the statute is content neutral. Plaintiff argues that *Hill* is no longer good law.[3] Plaintiff also argues that the "ordinance text *expressly* exempts from its harassment, intimidation, and consented approach restrictions 'employees, agents, or volunteers of the health care facility…acting within the scope of their employment, agency, or volunteer service,'" which makes the ordinance content based unless it advances public safety and order." Oppo. at 21 (internal citations omitted) (emphasis in original). Plaintiff further argues that the Ordinance is content based because it "discriminates on the basis of content and viewpoint." *Id*. at 22. Plaintiff states that "[the Ordinance] forbids entering a bubble zone without prior consent to 'engage in oral protest, education, or counseling,'" and enforcing that provision will "inescapably turn[] on the content (including the function and purpose) of what a person will say." Oppo. at 22. Plaintiff relies on *McCullen* to support his argument that "speech regulation is content based if its 'concerned with…[l]isteners' reactions to speech." Oppo at 23 (citing *McCullen v. Coakley*, 573 U.S. 464, 471 (2014)).

In *Hill*, the plaintiffs, who were also sidewalk counselors, sought to "educate, counsel, persuade, or inform passerbys about abortion, and abortion alternatives." 530 U.S. at 708. The plaintiffs in *Hill* challenged the constitutionality of a Colorado statute, which made it unlawful within 100 feet of the entrance to a healthcare facility to "'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person.'" *Id.* at 707. The Ordinance at issue here

---

[3] For the reasons set forth later in this Order, the Court finds that *Hill* remains good law, and this Court is bound by its holdings.

is modeled after the statute in *Hill*. *Id.* The Supreme Court in *Hill* held that the Colorado statute was content neutral and valid under intermediate scrutiny. *Id.* at 707 n.1, 725-30. In *Hill*, the court reasoned that (1) "it [was] a regulation of the places where some speech may occur" rather than a "regulation of speech"; (2) "it was not adopted 'because of disagreement with the message it conveys'" and the law's "restrictions apply equally to all demonstrators, regardless of viewpoint, and the statutory language makes no reference to the content of the speech"; and (3) "the State's interests in protecting access and privacy, and providing the police with clear guidelines, are unrelated to the content of the demonstrators' speech," *id.* at 719-20 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Additionally, the Court found that the statute "places no restrictions on – and clearly does not prohibit – either a particular viewpoint or any subject matter that may be discussed by a speaker. Rather, it simply establishes a minor place restriction on an extremely broad category of communications with unwilling listeners." *Id.* at 723.

Like in *Hill*, here, the Ordinance does not facially distinguish between different kinds of speech, ideas, or messages. It applies uniformly to all individuals, regardless of the message they wish to convey, and regulates only the manner in which speech is conducted near Covered Facilities. It applies to passing a leaflet, displaying a sign, engaging in oral protest, education or counseling. Exhibit A to the Compl. at 12-13. The Supreme Court has consistently found similar restrictions on broad categories of communications to be content neutral because they applied to everyone, regardless of viewpoint or subject matter. *See, e.g., Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 643-44, 648-49 (1981); *Turner Broad Sys., Inc. v. F.C.C.*, 512 U.S. 622, 645 (1994) (explaining that rules that make distinctions "based only upon the manner in which speakers transmit their messages to viewers, and not upon the messages they carry" are not presumed to violate the First Amendment). In fact, the Ninth Circuit recently found a regulation requiring a distinction between classes of speech to be content neutral. *See Project Veritas v. Schmidt*, 2025 WL 37879, at *4 (9th Cir. Jan. 7, 2025) ("a [r]egulation may remain content neutral despite touching on content to distinguish between

classes or types of speech – such as speech that constitutes solicitation…so long as it does not discriminate on the basis of viewpoint or restrict discussion of an entire topic").

Plaintiff takes issue with the exemption for employees, agents, or volunteers of the health care clinic, but courts have held that "[t]here is nothing inherently suspect about providing some kind of exemption to allow individuals who work at the clinics to enter or remain within the buffer zone[ ]." *McCullen*, 573 U.S. at 483. The *McCullen* court reasoned that there was a need for an exemption for clinic employees to enter and exit the clinic, and "the 'scope of their employment' qualification simply ensures that the exemption is limited to its purpose of allowing the employees to do their jobs." *Id.* Similarly, in this case, the Ordinance's exemptions for clinic employees do not render it viewpoint based. *Id.*

Plaintiff's argument that *Hill* is no longer good law also fails. In support thereof, Plaintiff argues that the three assumptions that the *Hill* court relied on to conclude that Colorado's buffer zone was content neutral have been abandoned. Oppo. at 12 (citing *Reed*, 576 U.S. at 163-164; *McCullen*, 573 U.S. at 481, 495; *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 n.8 (9th Cir. 2023) (en banc)). Plaintiff further argues that "[a]fter having never approvingly cited *Hill's* holding even once in the decades that followed it, the Supreme Court pulled no punches when denouncing it in *Dobbs* in 2022." Oppo. at 12 Plaintiff's conclusory argument is not supported by the cases on which he relies. For example, *Reed* addressed content-based restrictions, so the facts in that case are different from those in *Hill*, where the statute regulated conduct not content. In *Reed*, at issue was a town's "comprehensive code governing the manner in which people may display outdoor signs." *Reed*, 576 U.S. 159. The Sign Code treated Temporary Directional Signs less favorably than both Ideological Signs and Political Signs which led the Supreme Court to conclude that the Sign Code was "content based on its face." *Id.* at 164. Unlike the Sign Code in *Reed*, in *Hill*, the Colorado statute said nothing about what one can talk, counsel, educate, protest, or leaflet about. In *Hill* (and in the instant case), it was not the message of the speech that was important, but the manner of the speech. In other words, unlike in *Reed*, the Colorado statute was

concerned with the manner of speech and regulating any messages conveyed through "leafletting, displaying a sign, or engaging in oral protest, education, or counseling." 530 U.S. at 721-22.

Also, notwithstanding Plaintiff's argument to the contrary, the court in *McCullen* does cite *Hill*, stating that "[t]he statute was modeled on a similar Colorado law that this Court had upheld in *Hill v. Colorado*." *McCullen*, 573 U.S. at 470. The Supreme Court's statement in *McCullen* regarding the *Hill* decision indicates that it was aware of it, cited it, did not overturn it, and that it remains good law. *See, e.g., Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of th[e] [Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decision, the Court of Appeals should follow the case [that] directly controls, leaving to this Court the prerogative of overruling its own decisions."). Thus, *Hill* remains good law, and this Court is bound by its holdings.

Plaintiff's arguments regarding the "key dissimilarities" that exist between the law in *Hill* and the Ordinance are also without merit. Oppo. at 16-17. First, Plaintiff argues "[f]rom the day Ordinance [] was inked to the day the clinic's political director backdoored a grateful campaign contribution to the current city attorney the day the ordinance was approved, no one involved with enacting it seemed to doubt that it aimed only to suppress pro-life speech." *Id*. at 15. Even assuming that is true, as the Supreme Court explained in *Hill*, a statute is not "viewpoint based" simply because its enactment was motivated by the conduct of partisans on one side of a debate. 530 U.S. at 724. In *Hill*, the court still found the statute to be content neural even though the legislative record revealed that the statute was passed primarily to address pro-life speech outside abortion clinics. *Id*. at 715. Additionally, the Supreme Court has repeatedly upheld buffer zones without requiring an immediate threat at every regulated location. *See Hill*, 530 U.S. at 715; *see also McCullen*, 573 U.S. at 486-87. Notwithstanding this, the challenged Ordinance explicitly states that "demonstration activities around Covered Facilities have subjected [citizens] to harassment and abuse" and "aggressive demonstration activities pose significant public safety threats

and risk bodily harm to the demonstrators blocking driveways and doorways, and to the persons trying to access Covered Facilities." Exhibit A to the Compl. at 8.

Plaintiff's argument regarding the purported dissimilarity because of the "speed of enactment" also fails. Oppo. at 15. San Diego enacted a buffer zone in 1997 and the instant Ordinance is merely an update to that ordinance. As the Ordinance explicitly states, "the City of San Diego adopted a buffer zone ordinance in 1997 applicable to health care facilities, places of worship, and school grounds (Covered Facilities), which has not been amended since its adoption." Exhibit A to the Compl. at 7. In support of this argument, Plaintiff relies on *Schenk v. Pro-Choice Network of W.N.Y.*, 519 U.S. 357 (1997) and *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994), stating that these cases set forth guidelines for how quickly a government can make that last resort to speech-free zones outside abortion clinics. However, there is nothing in those cases that require governments to conduct a staged and escalatory approach before enacting reasonable time, place, and manner restrictions. Also, *Hill* affirmed the constitutionality of buffer zones based on general principles of public safety and access to facilities, which is what the San Diego City Council noted in the purpose of its Ordinance. 530 U.S. at 726.

Plaintiff's argument regarding the "bubble zone design principles" also fails. Oppo. at 16-17. Plaintiff argues that "the bubble zone principles articulated in *Hill* and applied in *Hoye* suggest that even if San Diego could satisfy all the other criteria for creating those zones (it cannot), bubbles eight feet wide still would need to be struck down because they 'prevent [affected speakers] from communicating a message at a normal conversational distance.'" Oppo. at 18 (citing *Schenk*, 519 U.S. at 377; *Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011)). The Supreme Court in *Hill* explicitly held that the eight-foot buffer is a reasonable distance noting that the "8-foot restriction on an unwanted physical approach leave ample room to communicate a message through speech." *Hill*, 530 U.S. at 726-730 ("Signs, pictures, and voice itself can cross an 8-foot gap with ease."). Plaintiff relies on *Schenk*, which predates *Hill*, and provides no legal support for his argument that the bubble zone principles articulated in *Hill* do not apply here.

Finally, Plaintiff's argument that the instant Ordinance "more comprehensively [] shuts down alternative communication channels than the statute in *Hill* did" also fails. Oppo. at 18. Defendant City of San Diego concedes that "the noise provisions, while stricter than those in *Hill*, remain consistent with the principles of time, place, and manner regulations." Reply at 6. Defendant states that "while the Ordinance may differ in scope, these differences are constitutionally insignificant." *Id.* For the reasons set forth in more detail below, the Court agrees with Defendant that the few differences between the instant ordinance and the statute in *Hill* (the inclusion of places of worship and school grounds, the express prohibition of any acts to "harass or intimidate," and a slightly stricter noise ordinance) are constitutionally insignificant and remain consistent with the principles of time, place, and manner regulations.

Indeed, another court in this district recently weighed in on the same challenged Ordinance. *See Blythe v. City of San Diego*, 24cv211-GPC-DDL, 2025 WL 108185 (S.D. Cal. Jan. 14, 2025).[4] In *Blythe*, the court found the Ordinance is content neutral, narrowly tailored to serve the government's interest in protecting those entering and exiting Covered Facilities, provides ample alternative channels of communication, and is not constitutionally overbroad. *Id.* For the reasons above, the Court finds that the Ordinance is content neutral.

### d. The Ordinance is a Valid Time, Place, and Manner Regulation

Having concluded the Ordinance is content neutral, the Court must next determine whether it is narrowly tailored to serve a legitimate and significant governmental interest and that "it leaves open ample alternative channels for communication." *Hill*, 530 U.S. at 725-26; *see also McCullen*, 573 U.S. at 477. The regulation need not be the least restrictive means of serving the government's interest, but the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not

---

[4] Although the Court was already aware of the *Blythe* decision, the Court **GRANTS** Plaintiff's Unopposed Ex Parte Application for Leave to File a Notice of Supplemental Authority (ECF No. 21).

serve to advance its goals." *McCullen*, 573 at 486 (quoting *Ward*, 491 U.S. at 798-99). Plaintiff argues that "the Ordinance does not advance any governmental interest" and that it is "not narrowly tailored and overly broad." Oppo. at 23-26.

As an initial matter, the City of San Diego has a substantial and legitimate interest in protecting individuals attempting to access Covered Facilities. *See Hill*, 530 U.S. at 728-29; *see also Hoye v. City of Oakland*, 653 F.3d 835, 844-45 (9th Cir. 2011) (the ordinance was modeled after the statute in *Hill*, so the "analysis of the Ordinance's facial constitutionality [wa]s mostly controlled by that case" except where the ordinance departed from the Colorado statute). Plaintiff has failed to allege sufficient facts in the Complaint to depart from the Supreme Court's holding in *Hill*, which recognized a governmental interest in protecting individuals attempting to access Covered Facilities. *See, e.g., Graff v. City of Chicago*, 9 F.3d 1309, 1323 (7th Cir. 1993) (en banc) ("Where the courts have already upheld a similar ordinance because of the governmental interests at stake, a future litigant should not be able to challenge similar governmental interests without showing some distinction at the pleading stage."); *see also G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1073 (9th Cir. 2006) (The Court "generally defer[s] to the legislative body passing the law in determining whether the government's ends are advanced by a regulation.").

Plaintiff argues that the Ordinance is not narrowly tailored. First, Plaintiff notes that "[t]he San Diego Municipal Code gives city police broad activity to break up crowds gathered on sidewalks" and "many generally applicable laws also prevent obstructions sans speech bans." Oppo. at 26-27. Plaintiff also relies on *Berger v. City of Seattle* for the proposition that "'a speech-restricting a law is not narrowly tailored if it either (1) 'only marginally, if at all, promotes the City's asserted interest'; or (2) 'applies, on its face, to an extraordinarily broad group of individuals, the vast majority of whom are not responsible for the evil [the government] seeks to remedy.'" Oppo. at 27 (citing *Berger*, 569 F.3d 1029, 1041 (9th Cir. 2009) (en banc)).

     Notably, the facts in *Berger* are vastly different from the facts in the instant case. In *Berger*, the Ninth Circuit held that a permitting system established by the City of Seattle for the Seattle Center was facially unconstitutional under the First Amendment noting that the Supreme Court "has repeatedly concluded that single-speaker permitting requirements are not a constitutionally valid means of advancing [the government's] interest because, typically, (1) they sweep too broadly, (2) they only marginally advance the government's asserted interests, and (3) the government's interests can be achieved by less intrusive means." *Id.* at 1038 (internal citations omitted).

     The challenged Ordinance in this case is nothing like the permitting system at issue in *Berger*. Plaintiff, once again, fails to articulate why the Supreme Court's reasoning in *Hill* does not apply here. The Colorado statute in *Hill*, like the Ordinance, prohibited intentional approaches within eight feet of another person outside healthcare facilities. It also limited its applicability to a 100-feet radius from the entrance to a healthcare facility. *Hill*, 530 U.S. at 715. The regulated areas in *Hill* are nearly identical in size to those covered in the Ordinance, both of which apply to healthcare facilities and require a culpable mental state. The Ordinance serves the City's goal of protecting those from entering and exiting the Covered Facilities from unwanted encounters "by enacting an exceedingly modest restriction on the speakers' ability to approach." *Id.* at 729. It does not ban any form of protected speech. Demonstrators can communicate their messages and otherwise engage in protected speech, but at an eight-foot distance and demonstrators with leaflets can peacefully pass them out to willing listeners without physically approaching unwilling listeners. *Hill*, 530 U.S. at 729-30. Finally, a content-neutral regulation does not need to be the least restrictive or least intrusive means of achieving the statutory goal. *Id.* at 726; *see also McCullen*, 573 U.S. at 486 (content neutral restriction "need not be the least restrictive or least intrusive means of serving the government's interests.") (internal quotation marks and citation omitted); *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 662 (U.S. June 27, 1994) (a content neutral regulation "need not be the least speech-restrictive means of advancing" a governmental interest); *Ward*, 491 U.S. at 798.

Accordingly, the Ordinance is narrowly tailored to serve the government's interest in protecting those entering and exiting the Covered Facilities.

### e. The Ordinance Leaves Open Ample Alternative Channels of Communication

Plaintiff argues that Ordinance shuts down alternative communication channels "much more comprehensively" than the statute in *Hill*. Oppo. at 18. Plaintiff argues that there are "three important ways" that the Ordinance is different than the statute in *Hill*. *Id*. at 19. First, Plaintiff argues that the "Colorado statute measures its 100-foot zone from a facility entrance, but San Diego measures its [zone] from an outer entry gate." *Id.* Second, Plaintiff argues that the "Colorado statute applied only to licensed healthcare facilities, but San Diego's applies to any place a licensed healthcare worker regularly sees patients or provides medical information or advice." *Id*. Third, Plaintiff argues that "the Colorado statute prohibited obstructing healthcare facilities, whereas the San Diego ordinance also prohibits obstructing any parking lot a facility owns, uses, or even tells a patient she can use." *Id*. Finally, Plaintiff argues that the "'harassment' provision and an unprecedently oppressive noise ordinance [are] found nowhere in the Colorado statute." *Id.* at 19.

The Court finds that Plaintiff's argument overstates the significance of the slight modifications of the instant Ordinance from the Colorado statute in *Hill*. The Court finds that the reasoning from *Hill* still applies here. For example, the fact that the Colorado statute measures its 100-foot zone from a facility *entrance*, but San Diego measures its own from an outer entry gate does not impact the constitutionality of the Ordinance. Oppo. at 19. Notably, Plaintiff fails to cite any authority or explain why this modification is constitutionally significant enough to make the reasoning of the *Hill* inapplicable to this case. Sidewalk counselors may still engage in First Amendment activities at reasonable distances from those entering and exiting the clinic, and they are free from restrictions as to willing listeners who provide consent.

Plaintiff also takes issue with the fact that the Colorado statute prohibited obstructing healthcare facilities, whereas the San Diego Ordinance also prohibits obstructing any

parking lot a facility owns or uses. Once again, this is still narrowly tailored to serve the government's interest in protecting those entering and exiting the Covered Facilities. Also, the fact that the instant Ordinance includes a "harassment provision" and a slightly stricter noise ordinance still does not silence speech. *See United States v. Waggy*, 936 F.3d 1014, 1018-20 (9th Cir. 2019) (explaining that an anti-harassment statute that proscribes harassing conduct does not violate the First Amendment.). For the reasons set forth herein, the Ordinance, even with these provisions, complies with the principles of time, place, and manner regulations. The Court agrees with Defendant that the harassment provision definitions mirror widely accepted criminal counterparts in the California Penal Code and are not unconstitutionally vague. Reply at 6; *see Hill*, 530 U.S. at 724.

There are ample alternative channels of communication here. As the *Hill* Court found, eight feet of separation will not impact readers' ability to read signs. *Hill* at 726-27 ("The 8-foot separation between the speaker and the audience should not have any adverse impact on the readers' ability to read signs displayed by demonstrators."). Although the Ordinance regulates noise level when using amplification equipment, the Ordinance still allows for conversation at a normal distance, and gives those handing out leaflets the ability to offer the material at a distance to which the pedestrian can easily accept or decline. *Id.* at 726-28 (noting that the ordinance still permitted communication at a "normal conversational distance" and permitted leafletting to consenting pedestrians). Here, although the Ordinance contains a noise provision that was not included in *Hill*, the Court finds that it is still narrowly tailored.

It is well established that an alternative channel need not be ideal, but merely adequate. *See Heffron*, 452 U.S. at 654-55. "The First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Id.* at 647. Here, for example, sidewalk counselors or other demonstrators are still free to set up in one spot, hold up signs, communicate at a normal conversational distance, and use loud speaking amplifiers as long as they do not exceed 55 decibels any point ten feet or more from the noise source. In sum, the Ordinance only restricts certain types of

speech in the place[s] where the restriction is most needed" to advance the government interest. *Hill* at 730; *see also Frisby v. Schultz*, 487 U.S. 474, 483 (1988) (An alternative channel is adequate if it "permits the more general dissemination of a message.").

For the reasons stated herein, the Court finds that the Ordinance is content neutral, narrowly tailored to a significant government interest, and provides ample alternative channels of communication. The Ordinance is thus a reasonable time, place, and manner restriction. Accordingly, Plaintiff's First Amendment claim for freedom of speech and expressive association cannot succeed.

### f.  The Ordinance is Not Overbroad or Vague

Plaintiff also argues that the Ordinance violates due process because it is overbroad and vague. Oppo. at 30. For example, Plaintiff argues that "ordinary people cannot know what activity the ordinance criminalizes" in light of the Ordinance's definitions of "harassment," "serious alarm," and "cause substantial distress." *Id.* at 31. Plaintiff argues that "[s]uch a standardless sweep conjures a specter of 'policemen, prosecutors, and juries [unleashed] to pursue their personal predilections.'" *Id.* at 32 (internal citations omitted).

A law is constitutionally overbroad "if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008); *see also Moody v. NetChoice, LLC*, 603 U.S 707, 723 (2024) ("The question is whether 'a substantial number of [the law's] applications are unconstitutional judged in relation to the statute's plainly legitimate sweep"). As set forth above, the Ordinance does not prohibit messages, signs, literature, or oral statements, but rather regulates where these communications may occur. Once again, Plaintiff's argument is foreclosed by *Hill*. 530 U.S. at 730. In that case, the "[p]etitioners argued…that the statute is too broad because it protects too many people in too many places, rather than just the patients at the facilities where the confrontational speech occurred." *Id.* The *Hill* court rejected this argument and found that "the fact that the coverage of a statute is broader than the specific concern that led to its enactment is of no constitutional significance. What is important is that all persons entering or leaving health care facilities shared the interests served by the statute." *Id*. at 730-31. Here, for the reasons

set forth above, the Ordinance is a valid time, place, and manner restriction on protected speech. The Ordinance applies to generally to all individuals, not just Plaintiff. The purpose of the Ordinance is to promote unimpeded access to Covered Facilities without prohibiting substantive speech by Plaintiff or others. In sum, Plaintiff has failed to meet his burden to show that the Ordinance is constitutionally overbroad. *See generally United States v. Hansen*, 599 U.S. 762 (2023) ("[I]nvalidation for overbreadth is strong medicine that is not be casually employed.").

An ordinance is unconstitutionally vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill,* 530 U.S. at 703. Where a case involves the First Amendment, a greater degree of specificity and clarity is required. *See Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1150 (9th Cir. 2001). However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward,* 491 U.S. at 781. Once again, the language of the Ordinance is not ambiguous and includes definitions of certain key terms such as "harassment" and "intimidation" using widely accepted legal standards. Plaintiff relies on the dissent in *Hill* in his Complaint to support his argument that "[t]he terms oral protest, education, or counseling are at least as imprecise as criminal prohibitions on speech the Court has declared void for vagueness in past decades." Compl. ¶ 80 (internal citations omitted). However, the Court is bound by the majority decision in *Hill*'s resolution on these issues, not the dissent.

In conclusion, taking all of Plaintiff's allegations as true and making reasonable inferences in his favor, the Complaint fails to sufficiently allege that the Ordinance is unconstitutionally overbroad or vague. Accordingly, Plaintiff's argument that the Ordinance violates Due Process under the First and Fourteenth Amendments must be dismissed.

### g. Leave to Amend

Finally, while Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should give leave [to amend] freely when justice so requires," the Court finds that

amendment under the circumstances of this case would be futile. *See Vasquez v. Los Angeles County*, 487 F.3d 1246, 1258 (9th Cir. 2007) (citing *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend)). Here, in light of the Court's finding that Plaintiff's challenge to the Ordinance is foreclosed by the binding precedent of *Hill* and for the additional reasons stated in this Order, amendment cannot cure the deficiencies of the Complaint. Accordingly, granting leave to amend would be futile, and is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss without leave to amend and **DENIES AS MOOT** Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED**.

Dated:  March 21, 2025

_____
Honorable Linda Lopez
United States District Judge